## NATIONAL FIRE INS. CO. v. PLUMMER.
### (No. 648.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 10, 1921.)

Insurance ⬅️579 — Compromise of insured's claim not avoidable because made on adjuster's opinion as to non-liability.

Compromise and settlement of claim under fire policy cannot be avoided and recovery allowed on policy, because made on statement of insurer's adjuster to insured that the company was not liable on the policy, because the insured goods had, before the fire, without notice to or consent of insurer, been removed from the place where insured; this being but an expression of his opinion, and no fiduciary relation being shown between him and insured.

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Action by Geo. A. Plummer against the National Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Orgain & Carroll, of Beaumont, for appellant.

T. H. Bowers, of Beaumont, and Rex G. Baker, of Houston, for appellee.

HIGHTOWER, C. J. We find in appellant's brief a concise and clear statement of the nature of this suit, and it is conceded by appellee to be correct, and is adopted by him. It is as follows:

"This suit was filed by George A. Plummer on September 19, 1919, in the county court of Jefferson county at law, in which it was alleged that the National Union Fire Insurance Company on the 20th day of June, 1918, insured plaintiff's household goods and furniture in Beaumont, Tex., against loss by fire, which policy was numbered 26370, expiring on July 7, 1920, and in the amount of $1,000; that on or about the 2d day of February, 1919, a fire occurred at plaintiff's home at 394 Harriott street, destroying said residence and practically all of the household goods and furniture, resulting in a loss of more than $1,000; that the National Union Fire Insurance Company thereafter paid $600, being 60 per cent of the face value of the policy, but refused to pay the other 40 per cent. The defendant in due time answered that it wrote the policy in question and specially pleaded that said policy only covered said household goods and furniture at 1850 South Neches street, and not elsewhere; that said household goods and furniture were moved from said location without the consent or knowledge of the defendant, or its agents, to a different location than that named in the policy; that the place where said goods were removed was in violation of the terms of the policy, and a more hazardous location, and was the proximate cause of the destruction by fire; the defendant further pleaded that on March 4, 1919, through its assistant treasurer, R. M. Nevins, it issued draft in the sum of $600 in

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

full satisfaction of plaintiff's claim, and that same was accepted, and the proceeds thereof received in full satisfaction, compromise, and indemnity for the loss and damage, under said policy; and that at the time said accord and satisfaction was had, there existed a controversy between plaintiff and defendant as to liability thereunder. Thereafter the plaintiff specially set up that the said $600 accepted under a mistake as to legal rights, which was caused by alleged fraudulent misrepresentations made by the defendant's claim adjuster, Myron T. Kinney, just prior to the acceptance by plaintiff of said draft; said misrepresentations alleged were that the plaintiff had forfeited his right to recover by removing his household goods without the consent of the defendant; that said agent was acting in the scope of his authority, and that said representation was made to induce plaintiff to settle; that he carried with him and read from some books certain passages purported to be the statutory provisions relative to fire insurance, which indicated to plaintiff and induced the belief that he had no forcible claim against the defendant; that the plaintiff relied upon said representations; that the claim adjuster knew they were false and misleading."

To the plea of fraud interposed by the plaintiff, as above shown, the defendant answered by general demurrer and several special exceptions, all of which were by the court overruled. Thereupon the case proceeded to trial with a jury, and at the conclusion of the evidence the defendant moved for an instructed verdict, which was refused by the court, and its action excepted to. The case was thereupon submitted to the jury upon special issues, and after the verdict had been returned both parties moved for judgment. Defendant's motion was overruled and that of the plaintiff granted, and judgment was entered in his favor for the $400 claimed by him, with legal interest. After defendant's motion for new trial had been overruled, it prosecuted an appeal to this court.

The first assignment of error found in appellant's brief challenges the action of the trial court in refusing its peremptory instruction for a verdict in its favor. A number of reasons are advanced in the form of propositions under this assignment, which appellant claims required an instructed verdict in its favor. We have given them all careful consideration, but have concluded that we may properly dispose of the case upon the third proposition advanced. It is as follows:

"The undisputed facts adduced upon the trial of the cause show that M. D. Kinney came from Dallas to see Plummer, a sworn statement as to the origin of the fire, in which statement Plummer informed Kinney that he was of the opinion that the fire was occasioned by defective wiring in the bathroom, and Kinney then informed Plummer that inasmuch as the policy of insurance had a provision to the effect that the policy only covered Plummer's household goods while they were located at 1850 South Neches street and nowhere else, and that inasmuch as in Plummer's opinion the fire at the house on Harriott street, to which Plummer had moved the goods without securing permission from the company, or without notice to the company, and that inasmuch as in Plummer's opinion the fire was caused by defective wiring in the bathroom, it was his [Kinney's] opinion that he could not recover on said policy of insurance, and such expression being merely an opinion on the part of Kinney as to a pure matter of law, and Kinney not being an agent of Plummer, or in a fiduciary capacity, such representation, if relied upon by Plummer, would not give Plummer the right, as a matter of law, to set aside the compromise agreement, or the right to recover against the defendant."

The undisputed testimony in this case, as we find it in the record, shows the following facts:

At the time of the issuance of the policy of insurance here in question appellee's household goods and furniture were at his then home, which was located at No. 1850 South Neches street, in the city of Beaumont. At the time they were destroyed by fire on January 21, 1919, they were located at No. 394 Harriott street, in the city of Beaumont, to which location the appellee had moved with his family. There was a provision in the policy to the effect that appellee's household goods and furniture were insured while located at No. 1850 South Neches street, and not elsewhere. The fire which destroyed appellee's goods and furniture occurred about 60 days after appellee's removal to his new location. Appellee did not notify appellant of his removal to his new location, and appellant did not have any notice of that fact from any source and never consented to such removal. After the fire, which resulted in practically a total loss of appellee's goods and furniture, he made in due time proper proof of loss to appellant's local agents in the city of Beaumont, and these notices of loss were forwarded to appellant by said local agents, and thereafter appellant's claim adjuster, Myron T. Kinney, who, it seems, was located at Dallas, Tex., came to Beaumont on February 12, 1919, for the purpose of adjusting this loss with appellee, and on that day met appellee in Beaumont in the office of appellant's local agents, Smelker & Maxon, and there the whole matter was gone over between appellee and the adjuster, Kinney. Kinney stated to appellee that his loss was an honest one, and that it really exceeded the face value of the policy, but that the company was under no legal obligation or liability to pay the loss or any part of it, for the reason that the appellee had moved the insured goods and furniture from the location where they were insured to another and different location without notifying appellant or its local agents of that fact. For this reason alone Kinney positively denied liability under the policy, and appellee, after discussing the matter with Kinney and ap-

pellant's local agents, Smelker & Maxon, who were of the same opinion as Kinney with reference to the nonliability of the company, finally consented to accept $600 as payment, and settlement in full of any claim he might have had against the insurance company under the policy, which, upon its face, was for the sum of $1,000. Thereafter, on March 14, 1919, appellant issued in favor of appellee its draft in the sum of $600 as settlement in full of the claim made by appellee under the policy of insurance. It recites upon its face that it "constitutes full satisfaction, compromise, and indemnity for all claims and demands for loss and damage by fire of January 21, 1919, to property described in policy No. 26370, issued at its Beaumont, Texas, agency, and said policy is hereby canceled in full and surrendered to said company," and bore the signature of George A. Plummer, the appellee. In connection with this draft, Plummer executed the following instrument:

"$600.00    Beaumont, Texas, March 14, 1919.

"Received of National Union Fire Insurance Company, of Pittsburg, Pa., sight draft for the sum of six hundred and 00/100 ($600.00) dollars, which, when paid, will be in full satisfaction, compromise, and indemnity for all claims and demands for loss and damage by fire, which occurred on the 21st day of January, 1919, to property described in policy No. 26370 issued at its Beaumont, Texas, agency, and said policy is hereby canceled in full and surrendered to said company.

"Claim $600.00.    George A. Plummer.  [Seal.]
"Discount $———.                        [Seal.]
"Net $600.00.

"Duplicate to be attached to policy."

Afterwards, on March 21, 1919, this draft was cashed by appellee and he received therefor the full sum of $600. Appellee testified as a witness on the trial below that he knew that Mr. Kinney was the agent of the insurance company, and that he was acting in the interest of the company when he made the settlement with appellee, and that appellee expected at the time that Kinney would settle for the company upon the best terms he could, and that he would "drive the best bargain he could for the company." He stated also, however, that he was influenced in making the settlement for $600 by the representation of Kinney to the effect that there was no legal liability resting upon the company to pay appellee anything. It was not denied by Kinney, who was a witness on the trial, that he told appellee that there was no legal liability resting upon the insurance company to pay the claim.

In the view we take of the point here under consideration, it is unnecessary to go more at length into the evidence as disclosed by the record. It is manifest that the parties, in making this settlement, were dealing at arm's length; that a controversy had arisen between them as to whether there was liability on the part of the insurance company

under its policy issued to appellee, the company claiming, through its agent, that there was no legal liability and the appellee insisting upon the payment of his policy. The record discloses, without dispute, that appellee, at the time the compromise and settlement was reached, knew every material fact relative to the fire and loss of his goods and furniture that were known by appellant or its said adjuster; that no material fact relative to the company's liability under the policy was withheld or attempted to be withheld from appellee to induce the settlement, and there is nothing in the record which suggests that appellant's said agent stood in any fiduciary relation or capacity to appellee in making the settlement, nor is there anything disclosed by the record which was calculated to cause appellee to repose in appellant's adjuster any special confidence; but, on the contrary, the evidence clearly shows that appellee knew, in making the settlement, that appellant's adjuster was acting in its interest, and that he would "drive the best bargain he could for his company." So the whole point, as we see it, is this: Did the statement by appellant's agent, Kinney, to appellee, to the effect that the insurance company was relieved of liability under the policy, for the reason that the insured goods had been removed from the location where insured to another location without notice to appellant and without its consent, constitute such fraud or deceit on the part of appellant's said agent as would relieve appellee against such settlement and compromise, and permit him to recover on the original policy? It is our opinion that the statement made by Kinney to appellee, to the effect that there was no legal liability on the part of appellant, for the reason that the goods and furniture had been removed, as above stated, amounted to no more than the expression of a legal opinion entertained by Kinney, and did not amount to the statement of any fact whatever. And we are further of the opinion that since appellee had full knowledge of all the facts relative to the subject-matter, concerning which the compromise and settlement was made between the parties, and since appellant's adjuster, Kinney, sustained no fiduciary relation toward appellee, and with the knowledge of appellee was acting for the best interest of his company in making the settlement, and since there was nothing in the relation of the parties calculated to inspire in appellee any special confidence in appellant's said adjuster, appellee, in action upon the legal opinion of said adjuster, in making said settlement, did so at his peril, and cannot be permitted to set aside and cancel the agreement and settlement so made by him on the ground, as specially pleaded by him, that appellant's said adjuster, Kinney, was guilty of fraud and deceit, which caused him to agree to such settlement. Appellee was as conclusively fixed with knowl-

edge of the law governing his rights under the policy as was appellant's adjuster, Kinney, and cannot be heard to deny such knowledge of his legal rights, and cancel and set aside the settlement on the ground, alone, as specially pleaded by him, which was, in effect, that appellant's adjuster had fraudulently and deceitfully misrepresented the law to him, in the absence of a showing by him that appellant's said agent sustained a fiduciary relation to him, or that the relations of the parties were such as to inspire such confidence on his part in appellant's said adjuster as ought, in good conscience, to relieve him from relying and acting upon the opinion of said adjuster touching his legal rights under his policy. We have shown above the precise attack made by appellee upon the settlement made with appellant's adjuster, and it is clear from his pleading in that connection that his only ground of attack was that the settlement had been induced on his part by false and fraudulent representations on the part of appellant's said adjuster, Kinney, as to appellee's legal rights under his policy, and in the very nature of things, such representations could be but the expression of a legal opinion of said adjuster touching appellee's rights under his policy.

We might add here that, while it was alleged by appellee, substantially, that the said adjuster, Kinney, at the time he expressed his legal opinion to appellee regarding his rights under the policy, he also read excerpts from some book or pamphlet which purported to be the law pertaining to appellee's rights under his policy. Upon the trial, however, it was admitted by appellee that he was mistaken in his allegation that said adjuster, Kinney, had read to him any such book or pamphlet, as alleged, and therefore that portion of his attack, as made by his special plea, upon the settlement in question was not sustained by any proof. But even if it had been shown by proof, as alleged in the special plea, that such book or pamphlet was exhibited and read to him by said adjuster, we fail to see how it could have availed appellee to any extent in setting aside the settlement, under the facts in this case and the relations of the parties, as we have above stated them. Before appellee would be entitled to recover the balance claimed by him to be due under the terms of his policy, it was incumbent upon him, of course, to plead and prove such facts as would authorize setting aside and canceling the settlement made by him with appellant, and if he has failed to do this the settlement must be upheld, and a recovery denied him under the terms of the policy.

In the case of Thompson v. Phœnix Insurance Co., 75 Me. 55, 46 Am. Rep. 357, the insurance company had issued to Thompson a policy of insurance on a house; the policy being for $1,000. While the policy was yet in force the house was destroyed by fire, and the company denied liability under the policy on the ground, among others, that the house had become vacant at the time of the loss. Thompson and the company's adjuster finally settled and compromised Thompson's claim against the company for $250. Afterwards Thompson sued the company and sought to set aside and cancel the settlement, on the ground that the company's adjuster procured the settlement by his willful and deceitful and fraudulent representations, to the effect that there was no liability on the part of the company, for the reason that the house was vacant when destroyed. It was alleged by Thompson, in attacking the settlement, that he relied on such false and deceitful representations on the part of the company's adjuster, and was induced thereby to make the settlement, and that therefore the same should be canceled and held for naught. In answer to this attack made by Thompson on the settlement, the company interposed a general demurrer. It was held by the Supreme Court of Maine that Thompson's plea attacking the settlement stated no fact that would authorize a cancellation of the settlement, and the company's general demurrer was sustained. Among other things in that case, it was said:

"The first count of the declaration sets forth that the company, 'well knowing the premises, but intending to cheat and defraud the plaintiff out of the benefit of his said policy, and the money due him thereon, fraudulently and deceitfully represented to the plaintiff that by reason of his not living in the house at the time of its being burned, he had so increased the risk that the company was not bound to pay anything, that the policy was null and void and of no effect, benefit or use to the plaintiff.' The second count charges, substantially, the same fraudulent representation on the part of the authorized agent of the company.

"If these declarations of the agent of the insurance company are regarded as statements of the law of insurance, of the legal conditions on which the right of recovery in such cases depends, they are not actionable, though false. The cases cited for the defendants are sufficient, if authority or argument were needed, to support the statement that under such circumstances a man has not a right to rely, except at his own peril, upon the representations of the avowed agent of the adverse interest, as to what the law will or will not do, or will or will not permit to be done. Common prudence and common sense would seem to be, in all ordinary cases, sufficient safeguards against frauds of that character; and the declaration does not aver exceptional circumstances to give the right of action in the present instance."

In the case of Ætna Insurance Co. v. Reed, 33 Ohio St. 283, Reed sued the insurance company on two policies covering his stock of goods; the aggregate amount of the policies being $2,750. Reed alleged that after due notice, etc., of loss, he demanded pay-

ment of his policies, which the company refused. Among other defenses, the company alleged that subsequent to the loss of Reed's goods by fire, and prior to the suit, there had been a settlement between the parties, under which the company paid Reed $100 in full satisfaction of both policies. Reed replied to the plea of settlement, alleging, substantially, that such settlement had been procured by fraud and deceit on the part of the company's agent and adjuster, one Rice, who, in order to induce the settlement, represented to Reed that there was no legal liability on the part of the company, and that the company would contest any suit filed by Reed, and that Reed would get nothing in the end. The Supreme Court of Ohio, in disposing of the case, among other things, said:

"The personal relation of the parties was not one calculated to beget confidence or reliance, but the contrary. Rice was acting avowedly as the agent of a party whose interests were averse to Reed, and common intelligence would have caused Reed to know he was not acting as his friend or advising his interests. Presumptively he would not be likely to stand in a relation different from other persons representing adverse interests. From the time the within statement was completed, Rice acted in a hostile rather than a friendly spirit, and with a strong assertion of opinion claimed the loss was a dead loss to Reed, and thus endeavored to induced Reed to think he could do no better than take his offer of $100. It was not done with the thought on either side that he was a friendly adviser, but rather as one driving the best bargain he could for his employer. In this Reed could scarcely be deceived. All this time Reed was apparently as fully conversant with the facts of the case as Rice, and at liberty to ascertain the law of his case if he desired to do so. It was even suggested to him to do so with the probable result."

See, also, Mayhew v. Phœnix Ins. Co., 23 Mich. 105; Mutual Life Ins. Co. v. Phinney, 178 U. S. 341-343, 20 Sup. Ct. 906, 44 L. Ed. 1088.

While the jury in this case found that appellant's agent, Kinney, was guilty of fraud and deceit in representing to appellee that appellant was not liable under the policy in question, and further found that appellee acted upon such fraudulent representation and deceit, and was induced thereby to settle with the company, still such finding cannot be sustained or given any force or effect, for the reason that as a matter of law, under the pleadings and undisputed proof in this case, there was no such fraud or deceit practiced by appellant's adjuster as would afford the right in appellee to set aside the contract of settlement made by him in this case.

We are therefore compelled to ignore the verdict of the jury and judgment of the trial court in this case, and to render judgment in favor of appellant, to the effect that appellee take nothing by his suit; and it will be so ordered.