**SAFETY CASUALTY CO. v. McGEE.**

No. 4704.

Court of Civil Appeals of Texas. Texarkana.

March 11, 1936.

Rehearing Denied April 9, 1936.

J. W. Hassell, of Dallas, and N. L. Dalby, of Texarkana, for appellant.

King, Mahaffey, Wheeler & Bryson, of Texarkana, and O. H. Atchley, of New Boston, for appellee.

S. F. LESLIE, Special Chief Justice.

Appellee, Joel Robert McGee, Jr., who resided at New Boston, Bowie county, Tex., instituted suit in the district court of Bowie county, Tex., on August 31, 1933, against appellant, Safety Casualty Company, to set aside and hold for naught a compromise settlement agreement and a compromise settlement receipt, both of which were executed on or about the 31st day of May, 1933; that said settlement agreement and settlement receipt was brought about by appellant's agent, Dr. H. W. Mann.

Appellee alleged that he was an employee of the Magnolia Petroleum Company as its agent for the purpose of handling the products of said Magnolia Petroleum Company in and around the town of New Boston, Tex.; that while he was engaged in the usual duties and course of his employment, on or about the 30th day of January, 1933, he received an injury while loading a barrel of oil on his truck, which caused a strain to the sacroiliac joint, resulting in his total and permanent disability.

He alleged that at the time he received his injury, and up until he was visited by

the agent of appellant, Dr. H. W. Mann, he did not know he was entitled to any compensation under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.). He alleged further that Dr. H. W. Mann was not only ·the agent and representative of appellant, but that, at and during the time the compromise settlement and agreement was entered into, Mann was also an employee and working for the Magnolia Petroleum Company.

Appellee further alleged that on April 11, 1933, he received a letter from appellant requesting him to report to Dr. Good at Texarkana for a physical examination. Before he went to see Dr. Good he was visited by Dr. H. W. Mann with reference to being paid for his injuries, under the Workmen's Compensation Law. That after his visit to Dr. Good, on May 31, 1933, Dr. H. W. Mann paid him another visit which resulted in his signing the compromise agreement and compromise settlement receipt, and was paid the sum of $135 in settlement of his claim against appellant.

He alleged further that said Mann practiced fraud upon him in effecting said settlement, in that he represented and told appellee that he (the said Mann) was the ·agent of appellant, Safety Casualty Company, and represented to appellee that said Safety Casualty Company was a department and part of the Magnolia Petroleum Company that was looking after and caring for all employees of said Magnolia Petroleum Company who received injuries in the course of their employment, and further represented to appellee that said Safety Casualty Company was owned by, and was a part of, said Magnolia Petroleum Company, and that he was, in fact, an agent for appellant directly, and was indirectly an agent of Magnolia Petroleum Company, and that he had come to pay him for the injury received.

Appellee further alleged that the said Mann represented to him that he knew all about, and fully understood, the injury received by appellee, and knew the amount of money he was entitled to under the law; that the amount appellee was entitled to under the Workmen's Compensation Act was $135, which, according to the law, was all that appellee was entitled to receive from such injury as he received; that said representations were false.

Appellee further alleged that the said Mann represented to him that he had made a calculation of the amount of money that appellee was to receive under the Workmen's Compensation Law of Texas, and that, according to such calculation, said sum of money was $135; that said calculation was correct and according to law, which said representations were false.

Appellee further alleged, among other things, that the agent Mann told him that he was not entitled to any pay or sum of money for partial disability. Appellee further alleged that the agent Mann was an experienced adjuster, well versed in all matters pertaining to same, well versed in all matters pertaining to settlement under the Workmen's Compensation Law; that he had adjusted many claims.

Appellee alleged that the representations of the agent Mann were false; that said agent knew they were false when he made them; that he made said representations for the sole purpose of deceiving appellee; that he made said representations for the sole purpose of inducing appellee to sign the agreement and receipt above referred to; that he knew they were false when he so made them; that appellee believed and relied upon said false statements, and was induced to sign said agreement and receipt by virtue of said false and fraudulent representations.

Appellee further alleged that he was unlearned in the law with reference to Workmen's Compensation Act. Appellee alleged, among other things, total and permanent disability on account of said injury. He did not know the fraud perpetrated on him until about July, 1933, when he employed counsel to file suit. Appellant answered by general demurrer, general denial, and a great many special exceptions, except to certain parts of appellee's petition, which were admitted. A trial was had to a jury on special issues, which were answered favorably to appellee, and upon which the court rendered judgment for appellee on the 22d day of November, 1933; the judgment rendered being the cancellation of the compromise settlement and agreement and the compromise settlement receipt; that, except as to the cancellation of the above instruments, the findings of the jury to the issues submitted to them should not be binding on either plaintiff or defendant to any suit that might be hereafter brought by plaintiff against the defendant for compensation by reason of injuries alleged to have been received.

From this judgment appellant has prosecuted an appeal to this court.

Appellant brings forward some 40 assignments of error, which when considered carefully, a great many of them can properly be considered under its assignment of error to the lower court's failure to sustain its general demurrer, and, in considering this case, we are first addressing ourselves to that proposition.

Appellant's general demurrer and a great many of its exceptions which have been brought forward go to the very important question as to whether or not the appellee's petition, when considered as a whole, was sufficient to support a judgment.

■ It is elementary that, if the petition upon which appellee went to trial in the lower court was insufficient to support a judgment, no valid judgment under any circumstances could be rendered.

■ It will be noted from what has been said that it was alleged that a confidential relationship existed between the appellee and the agent Mann. It will be further noted that it was specifically alleged that the agent Mann had superior knowledge about the matters under consideration, and that appellee relied upon the statements of the agent Mann. In passing upon appellant's general demurrer, the court was required to consider all the allegations of appellee as true, and we are of the opinion that the court did not err in overruling the general demurrer and special exceptions of appellant.

■ We have examined carefully most of the authorities cited by appellant in support of its contention and most of the authorities cited by appellee, and we are of the opinion that the authorities of appellee fully sustain the conclusions above reached, which authorities are as follows: Garsee v. Indemnity Ins. Co. of North America (Tex.Civ.App.) 47 S.W.(2d) 654; 26 Cor.Jur. pp. 1208, 1209; 12 R.C.L. p. 296, § 60; Holt v. Gordon (Tex.Civ.App.) 176 S.W. 902; Moreland v. Atchison, 19 Tex. 303; Schaeffer v. Blanc (Tex.Civ. App.) 87 S.W. 745; Pomeroy's Equity Juris. vol. 2, p. 1814, § 878; Riggins v. Trickey, 46 Tex.Civ.App. 569, 102 S.W. 918; White v. Peters (Tex.Civ.App.) 185 S.W. 659; Stewart v. McAllister (Tex.Civ.App.) 209 S.W. 704; McDonald v. Lastinger (Tex.Civ.App.) 214 S.W. 829; Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808; Black on Rescission and Cancellation, vol. 1, p. 72; Black on Rescission and Cancellation, vol. 1, p. 194.

Appellant has brought forward numerous assignments of error, all going to the question of the sufficiency of the evidence to sustain the verdict, and all may be considered under appellant's assignment of error in the refusal of the court to render judgment for appellant in the lower court upon its motion for judgment. We will consider all these assignments of error in one in passing on the question of whether or not the evidence supports the verdict.

The court submitted this case to the jury upon something like fourteen special issues, which were all answered in appellee's favor. From the questions and answers of the jury the following facts are established:

(1) That on or about the 30th day of May, 1933, and just before the signing of the settlement agreement and settlement receipt, Dr. H. W. Mann, as agent of the appellant, Safety Casualty Company, represented to plaintiff that he (plaintiff) was only entitled, under the Workmen's Compensation Law of Texas, to the sum of $135 in full consideration of injuries received January 30, 1933.

(2) That said representations were false.

(3) That Dr. H. W. Mann knew at the time he made such representations that they were false.

(4) That said representations so made by Dr. H. W. Mann were made with the intention of inducing the plaintiff in the court below, Joel Robert McGee, Jr., to sign the compromise settlement agreement and the compromise settlement receipt.

(5) That appellee, Joel Robert McGee, Jr., believed said representations to be true.

(6) That Joel Robert McGee, Jr., relied upon said representations in signing the instruments above referred to.

(7) That appellee was induced to sign said agreement and receipt on account of said representations.

(8) That appellee, Joel Robert McGee, Jr., would not have signed the agreement and receipt except for the representations made by Dr. H. W. Mann.

(9) That appellee, Joel Robert McGee, Jr., received an injury in the usual course of his employment with the Magnolia Petroleum Company on the 30th day of January, 1933.

(10) That said injury resulted in total incapacity.

(11) That said incapacity would not be permanent.

(12) That Dr. H. W. Mann knew at the time appellee signed said agreement and receipt that the appellee, Joel Robert McGee, Jr., was incapacitated.

(13) That the average weekly wages of appellee for one year prior to date of injury was $22.

In holding that the petition of plaintiff in the court below was not subject to demurrer, does not of itself settle the proposition that the evidence is sufficient to support judgment. Plaintiff in the court below alleged confidential relationship between plaintiff in the court below and the appellant. We are not prepared to find that the plaintiff in the court below established that fact, although it was shown that Dr. H. W. Mann represented the appellant and was in a measure in the employment of the Magnolia Petroleum Company, but we doubt whether under facts of that kind a confidential relationship existed, because Dr. H. W. Mann, even if it might be said, was at the time of the settlement and at all times under the employment of appellant and the Magnolia Petroleum Company, it would not necessarily show that a confidential relationship was shown by reason that both appellee and the agent of appellant were working for the same company.

The evidence in the lower court showed that Dr. H. W. Mann, agent of appellant, was an experienced adjuster in claims and matters pertaining to amounts due under the Workmen's Compensation Act, was well versed in the law pertaining to adjustment of claims of this kind, and was well versed in the provisions of the Workmen's Compensation Act, and, according to the findings of the jury, Dr. H. W. Mann knew at the time of the signing of the agreement and receipt that the appellee was incapacitated.

The proof further shows that appellee was a man of more than ordinary high school education, and had had considerable business experience. Appellant contends that the case of McGary v. Campbell et al. (Tex.Civ.App.) 245 S.W. 106, 112, 115, is a case in point, and urges that this court should follow the rulings laid down in that case. Appellee, as earnestly as appellant, insists that the case of Garsee v. Indemnity Ins. Co. of North America (Tex.Civ.App.) 47 S.W.(2d) 654, 656, is a case similar to the case on appeal, and even referred to the Garsee Case as a "black-eyed pea" case to the case at bar, and should be followed.

We are of the opinion that neither the McGary v. Campbell Case, or the Garsee Case is similar in facts to the instant case. In the McGary v. Campbell Case it seems that a contract was under consideration, and a time limit for the ending or enforcing said contract was not mentioned in same, and Campbell informed McGary, in substance, that a man by the name of League, who was entitled to money payment under the contract, could not be made to wait indefinitely for the payment of the money, but that he was entitled to the payment of his money within a reasonable time, and could go into the courts and compel action. As we understand that case and the rulings therein, the statement of law above referred to was a correct statement of the law under many cases referred to in the decision.

In the next paragraph of the McGary v. Campbell decision it is said: "When Campbell told plaintiff in error in his (Campbell's) judgment the law would read into the contract a time limit, said statement, given its fullest force, was 'but the expression of an opinion as to his view of the law on a state of facts equally known to both, and was not and could not be held to be a representation that could be made the basis of a charge of fraud'"—citing under that proposition National Fire Ins. Co. v. Plummer (Tex.Civ.App.) 228 S.W. 250, and other cases. In the McGary v. Campbell Case it was further found that no confidential relationship existed between the parties thereto.

In the Garsee Case no confidential relationship is shown, but it is dissimilar to the case on appeal, in that the appellee Garsee in that case was a very old man, very unlearned, unable to read and write the English language, or any other language. The representations made to Garsee were almost similar to the representations made by the agent Mann to appellee, stating, among other things, to Garsee the following: That the sum of $149.50 was all that Garsee was entitled to receive under the law, and that said sum was reasonable and it was right and proper for him to have said amount; that said sum of $149.50 was the usual, reasonable, and

customary amount to be paid in such cases. The Garsee Case further shows that Garsee was paid only $149.50, when in fact he was entitled to $471.75, and that he was defrauded out of $324.25.

The difference in the case on appeal and the Garsee Case is shown by the difference in the mentality of the parties, ages, and business experience. We quote the following from the Garsee Case: "The general rule is that misrepresentation or concealment as to a matter of law cannot constitute remedial fraud, because everyone is presumed to know the law, and therefore cannot in legal contemplation be deceived by the erroneous statements of law, and such representations are ordinarily regarded as mere expressions of opinion, on which the hearer has no legal right to rely. 12 R.C.L. p. 295, § 59; 26 C.J. p. 1207, § 106 (E). But it is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood. Likewise, redress may be had if one party possessed superior knowledge and took advantage of the other party's ignorance of the law to mislead him by studied concealment or by misrepresentation, and this is especially true where confidential relations obtained. 26 C.J. p. 1208, 1209; 12 R.C.L. p. 296, § 60; Moreland v. Atchison, 19 Tex. 303; Holt v. Gordon (Tex.Civ.App.) 176 S.W. 902; Schaeffer v. Blanc (Tex. Civ.App.) 87 S.W. 745 (writ refused). We think that appellant's petition alleging fraud on the part of appellee's agent and representative was sufficient to carry the question to the court or jury for determination, and that, if the proof sustained appellant's allegations, he should have had judgment setting aside the compromise settlement."

As we understand the language as used by the court in the above opinion, it assuredly holds that, when representations are made, although the representations involve a point of law, if said representations are made with the purpose and intent to mislead and are acted upon by the parties to whom made, such representations will be considered misrepresentations of facts and constitute actionable fraud. From the above opinion we find this language: "Likewise, redress may be had if one party possessed superior knowledge and took advantage of the other party's ignorance of the law to mislead him by studied

concealment or by misrepresentation, and this is especially true where confidential relations obtained."

While we do not desire to have it understood that the proof in this case showed confidential relationship, we do find that the agent Mann, according to the proof, did possess a superior knowledge of the law as applied to the Workmen's Compensation Act, and did take advantage of the other party's ignorance of the law to mislead him. That the agent Mann knew well the law as applied to the compensation due appellee cannot be doubted or contradicted from the evidence and the jury's findings; that appellee did not possess any knowledge of the law with reference to his rights under the Workmen's Compensation Act cannot be doubted or contradicted from the evidence introduced, which is further substantiated by the fact that the proof shows that appellee was in bed five or six weeks with a serious injury and had never inquired of anybody as to his right, or had written to the Company or to any other person respecting his right; in fact, he testified to the fact that he did not know that he was entitled to anything until approached by Mann.

In the Garsee Case we further find the following language: "It is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood."

We are of the opinion that the proof in this case and the findings of the jury show beyond question that the statement as to the provisions of the Compensation Law was a misrepresentation, and that same was so intended when made. We are of the opinion that the facts and circumstances and the proof in this case and the findings of the jury take the case out of the general rule; that expression and opinion of the law are not such representation as to constitute fraud. In support of our contention we refer to and quote from the following authorities:

White v. Peters (Tex.Civ.App.) 185 S. W. 659, 660: "The law is that, when a person makes a statement in the form of an opinion and knows of facts which make the opinion a sham and a fraud, he has really made a misrepresentation of fact."

Massirer v. Milam (Tex.Civ.App.) 223 S. W. 302, 305: "Where false representations have been made, with the intention

that they should be relied upon, it is not necessary to show that the purchaser might have discovered the falsity of said representations by the exercise of ordinary diligence. The purpose of fraudulent representations is to cause the vendee to forego the use of any diligence to ascertain the facts, and, where such representations have that effect, it does not lie in the mouth of the party making the same to say to the victim of his fraud, You should not have believed my statements, though I made them with the intention that you should believe them and be misled thereby, and obtained the contract from you, knowing that I had misled you."

26 Cor.Jur. pp. 1208, 1209: "But misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood, as where they amounted to an implied assertion· that facts existed which justified the conclusion of law expressed, and where, in addition to misrepresentations of law, there were also actionable misrepresentations of fact or a promise made without intent to perform, recovery may be had. Redress may likewise be had if one party possessed superior knowledge and took advantage of the other party's ignorance of the law· to mislead him by studied concealment or by misrepresentation, and this is especially true if confidential relations obtained as in the case of parent and child, or executors and persons beneficially interested in the estate."

While we have not had the opportunity to examine Black on Rescission and Cancellation, which text is quoted both by appellant and appellee, we refer to the following as set out in appellee's brief (volume 1, par. 71): "Attention should be paid to these exceptional cases, in which the general rule does not operate. In the first place, if one of the parties occupies a fiduciary or confidential relation to the other, that other is justified in relying fully, and without injury, upon the representations made to him, whether they relate to matter of fact or matter of law, and the corresponding duty to make a full and frank disclosure embraces the law applicable to the case as well as the facts. Hence if, in such a case, advantage is taken of one's ignorance of the law, or his trust is abused by instilling into his mind an erroneous conception of the law, it is as much a fraud as to deceive him in re-

gard to the facts. And this rule is especially and peculiarly applicable where the party making the representations is the other's own attorney. And again, aside from such a relationship, if one of the parties is ignorant of the law or of his legal position and rights, and the other is aware of this fact, and is also perfectly informed of the legal principles, rules, or statutes applicable to the existing state of affairs, and takes advantage of his superior knowledge and of the other's ignorance, and so misrepresents and misstates the law as to induce him to enter into an inequitable bargain, or to part with rights or property which he might have retained, it is considered such fraud as to justify a court of equity in giving relief."

From the above authorities, and others cited in this judgment, we are of the opinion that the evidence sustains the judgment.

Appellant insists that this case should be reversed for the reason that there was not submitted to the jury for a finding of the jury facts showing substantial damages and that substantial damages were not shown. Article 2190, R.C.S.(1925), amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ.St. art. 2190), provides: "An issue not submitted and not requested is deemed as found by the Court in such manner as to support the judgment if there is evidence to sustain such finding."

Appellee was injured in January, 1933, ten weeks preceding the 1st of April, 1933. He was totally disabled on the date the settlement was made; he was paid only up to that date; the testimony is undisputed that he was totally disabled continuously up until and on the date of the trial (November, 1933); he suffered total incapacity for a period of at least 32 weeks, which, at the appellant's figures of $13.26 per week, amount to the sum of $424.32, for which he was not paid, which sum is, of course, a substantial sum and substantial damage. There is no conflict in the evidence about his being totally disabled continuously from the date of his injury up to November, 1933, the date of this trial. There being no conflict, then the question of substantial damage was not a disputed issue and not properly a jury question.

Under all the testimony we are of the opinion that substantial damages were fully shown and same was not a jury question, and we refer to the following authorities: Article 2190, R.C.S.(1925), as amended; Russell v. Industrial Transportation Co.,

113 Tex. 441, 258 S.W. 462, 51 A.L.R. 1, affirming opinion of Commission of Appeals in 113 Tex. 441, 251 S.W. 1034, 51 A.L.R. 1; 20 Tex.Jur. pp. 177, 178, § 123; Price v. D'Yarmett (Tex.Civ.App.) 27 S. W.(2d) 616; North v. Atlas Brick Co. (Tex.Com.App.) 13 S.W.(2d) 59; McDaniel v. Orr (Tex.Com.App.) 30 S.W.(2d) 489; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S. W.(2d) 1084; Bulin v. Smith (Tex.Com. App.) 1 S.W.(2d) 591.

Appellant in its brief, page 186, very aptly said that this case was presented primarily upon the two propositions that the petition does not state a cause of action and that the undisputed evidence is insufficient to sustain the judgment.

We have examined this record of over 500 pages and have considered as far as possible all assignments of error as presented by appellant, and, finding no reversible error therein, we overrule same.

The judgment of the lower court is affirmed.

HALL, Justice (dissenting).

I am unable to agree with my associates in all the conclusions reached by them in their opinion affirming the judgment of the lower court in this case. With due regard for their feelings and deep respect for their ability, I register this, my dissent.

In my humble judgment, the evidence in this case is wholly insufficient to support the findings of the jury, and the judgment of the court rendered thereon should be reversed and rendered in favor of appellant.

While I do not agree with all the conclusions reached in the majority opinion relating to the other phases of the case there discussed, I will address this dissenting opinion to the insufficiency of the evidence to support the judgment of the lower court. With regard to the evidence upon which it is sought to set aside the settlement agreement and receipt the following are the salient facts:

"He came in the office and said he had Dr. Good's report, and the papers ready for a settlement; and my father asked him if he had the report with him that he would like to see it. He let him read it, and he said—'Let's see, when was the first day you hurt your back,' and I told him January 30. He says: 'Now, what day was it you went down to the warehouse,' and I told him I went down to the warehouse on April 19. He began to enumerate the weeks and said: 'Do you know how this compensation insurance is figured,' and I told him I didn't, and he said that he did. He asked my father if he knew, and he said he didn't. He said that he did, and that he made these adjustments from time to time for the Casualty people, and that it was figured on the basis of the earnings the prior year, on a weekly basis, and he began to enumerate the weeks, and said it figured $133.00, but that they had to figure it in the multiple of five, and he would have to pay me $135.00, and that was all I was entitled to under this compensation law, because they did not pay any partial disability after I went to work at the warehouse, that it wasn't like any other insurance, accident or any other, paying partial disability. He told me this $135.00 was all I was entitled to, and I told him if it was all I was entitled to, it would be all. I turned and told my father the amount of the settlement and father said it settled it, and he said 'sign this, it is a matter of form. The big boys have to sign it.' He then turned to my father and asked him what his bill was for services, and father said it would be pretty hard for him to enumerate the cost, that he went to see me lots of times when probably I didn't need attention. Dr. Mann suggested the price, and my father said 'If you think that it is all right, it would be all right with me,' and it was either $25.00 or $30.00, I don't remember which. He told my father that he would receive his check in a short time, by return mail, and he turned to me and said that I would receive mine within a few days, and that was all that was said. I believed his statements. I believed them from the previous conversations with him, and his saying or telling me the connection between the Magnolia Petroleum Company and the Safety Casualty Company and the man he sent here to talk to me. I did not at that time know what I was entitled to under the Workmen's Compensation Act of the State of Texas."

The testimony of Dr. McGee, father of appellee, with respect to the settlement agreement and receipt, is practically the same as that of appellee quoted above. The settlement agreement and receipt were executed on May 31, 1933, the appellee's

employment was terminated by the Magnolia Petroleum Company on ,August 31, 1933, and suit was filed by him against appellant on August 31, 1933.

It was on the second visit of the agent Mann that appellee claimed the fraud was practiced upon him. It will be noted from the evidence set out above that the appellee contends that agent Mann told him that under the Compensation Law he was entitled to only $135, and that he (Mann) knew how to figure compensation under the Compensation Act, and, further, that the compensation insurance was different from the ordinary accident insurance, in that no payment for partial disability was allowed. This statement, at most, it seems to me, was but an opinion of the agent Mann as to what the law was with respect to appellee's claim under the Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.). The evidence wholly fails to show that there was any fiduciary relationship between Mann and the appellee. Appellee was thirty-two years of age, and, so far as this record discloses, was in full possession of all his faculties. He had been working for himself, so to speak, since he was nineteen years of age. He had training in electrical engineering and had two years in college with business training. The record further discloses that he was wholesale and retail agent for Magnolia Petroleum Company in the town of New Boston, Tex., and had been such for two years prior to his injury. And, so far as this record discloses, he had never met appellant's agent Mann until his first visit to see appellee after his injury in January. There is nothing in the record to show that Mann forced the appellee to sign the agreement and receipt sought to be set aside. It is not contended that he even insisted that the appellee should sign the instrument sought to be canceled. On the first visit to see appellee Mann told him that he was in no hurry to make a settlement, and he in no way prevented appellee from informing himself as to the law governing his injury, but gave him ample opportunity to do so between his· two visits. The fact is, the appellee did, some time after the settlement, proceed to inform himself with respect to his rights under the Compensation Law by securing and reading the same; thus doing at a later date what he should have done before signing the settlement agreement and receipt. There is no hint in 'the evidence by any one showing any circumstances that obliged appellee to settle on Mann's last visit and on terms proposed by Mann. Common prudence, it seems, would have compelled appellee to realize that he was dealing with his adversary, who would make the best bargain possible, and that he could not look to Mann for any aid or advice which would be advantageous to him (appellee) and against Mann's employer. In the case of National Fire Ins. Co. v. Plummer (Tex.Civ.App.) 228 S.W. 250, 252, it is said:

"In the view we take of the point here under consideration, it is unnecessary to go more at length into the evidence as disclosed by the record. It is manifest that the parties, in making this settlement, were dealing at arm's length; that a controversy had arisen between them as to whether there was liability on the part of the insurance company under its policy issued to appellee, the company claiming, through its agent, that there was no legal liability and the appellee insisting upon the payment of his policy. The record discloses, without dispute, that appellee, at the time the compromise and settlement was reached, knew every material fact relative to the fire and loss of his goods and furniture that were known by appellant or its said adjuster; that no material fact relative to the company's liability under the policy was withheld or attempted to be withheld from appellee to induce the settlement, and there is nothing in the record which suggests that appellant's said agent stood in any fiduciary relation or capacity to appellee in making the settlement, nor is there anything disclosed by the record which was calculated to cause appellee to repose in appellant's adjuster any special confidence; but, on the contrary, the evidence clearly shows that appellee knew, in making the settlement, that appellant's adjuster was acting in its interest, and that he would 'drive the best bargain he could for his company.' So the whole point, as we see it, is this: Did the statement by appellant's agent, Kinney, to appellee, to the effect that the insurance company was relieved of liability under the policy, for the reason that the insured goods had been removed from the location where insured to another location without notice to appellant and without its consent, constitute such fraud or deceit on the part of appel-

lant's said agent as would relieve appellee against such settlement and compromise, and permit him to recover on the original policy? It is our opinion that the statement made by Kinney to appellee, to the effect that there was no legal liability on the part of appellant, for the reason that the goods and furniture had been removed, as above stated, amounted to no more than the expression of a legal opinion entertained by Kinney, and did not amount to the statement of any fact whatever. And we are further of the opinion that since appellee had full knowledge of all the facts relative to the subject-matter, concerning which the compromise and settlement was made between the parties, and since appellant's adjuster, Kinney, sustained no fiduciary relation toward appellee, and with the knowledge of appellee was acting for the best interest of his company in making the settlement, and since there was nothing in the relation of the parties calculated to inspire in appellee any special confidence in appellant's said adjuster, appellee, in action upon the legal opinion of said adjuster, in making said settlement, did so at his peril, and cannot be permitted to set aside and cancel the agreement and settlement so made by him on the ground, as specially pleaded by him, that appellant's said adjuster, Kinney, was guilty of fraud and deceit, which caused him to agree to such settlement. Appellee was as conclusively fixed with knowledge of the law governing his rights under the policy as was appellant's adjuster, Kinney, and cannot be heard to deny such knowledge of his legal rights, and cancel and set aside the settlement on the ground, alone, as specially pleaded by him, which was, in effect, that appellant's adjuster had fraudulently and deceitfully misrepresented the law to him, in the absence of a showing by him that appellant's said agent sustained a fiduciary relation to him, or that the relations of the parties were such as to inspire such confidence on his part in appellant's said adjuster as ought, in good conscience, to relieve him from relying and acting upon the opinion of said adjuster touching his legal rights under his policy. We have shown above the precise attack made by appellee upon the settlement made with appellant's adjuster, and it is clear from his pleading in that connection that his only ground of attack was that the settlement had been induced on his part by false and fraudulent representations on the part of appellant's said adjuster, Kinney, as to appellee's legal rights under his policy, and in the very nature of things, such representations could be but the expression of a legal opinion of said adjuster touching appellee's rights under his policy.

"We might add here that, while it was alleged by appellee, substantially, that the said adjuster, Kinney, at the time he expressed his legal opinion to appellee regarding his rights under the policy, he also read excerpts from some book or pamphlet which purported to be the law pertaining to appellee's rights under his policy. Upon the trial, however, it was admitted by appellee that he was mistaken in his allegation that said adjuster, Kinney, had read to him any such book or pamphlet, as alleged, and therefore that portion of his attack, as made by his special plea, upon the settlement in question was not sustained by any proof. But even if it had been shown by proof, as alleged in the special plea, that such book or pamphlet was exhibited and read to him by said adjuster, we fail to see how it could have availed appellee to any extent in setting aside the settlement, under the facts in this case and the relations of the parties, as we have above stated them. Before appellee would be entitled to recover the balance claimed by him to be due under the terms of his policy, it was incumbent upon him, of course, to plead and prove such facts as would authorize setting aside and cancelling the settlement made by him with appellant, and if he has failed to do this the settlement must be upheld, and a recovery denied him under the terms of the policy."

The Supreme Court of Maine in the case of Thompson v. Phœnix Ins. Co., 75 Me. 55, 46 Am.Rep. 357, says:

"The first count of the declaration sets forth that the company, 'well knowing the premises, but intending to cheat and defraud the plaintiff out of the benefit of his said policy, and the money due him thereon, fraudulently and deceitfully represented to the plaintiff, that by reason of his not living in the house at the time of its being burned, he had so increased the risk that the company was not bound to pay anything, that the policy was null and void and of no effect, benefit or use to the plaintiff.' The second count charges, substantially, the same fraudulent repre-

sentation on the part of the authorized agent of the company.

"If these declarations of the agent of the insurance company are regarded as statements of the law of insurance, of the legal conditions on which the right of recovery in such cases depends, they are not actionable, though false. The cases cited for the defendants are sufficient, if authority or argument were needed, to support the statement that under such circumstances a man has not a right to rely, except at his own peril, upon the representations of the avowed agent of the adverse interest, as to what the law will or will not do, or will or will not permit to be done. Common prudence and common sense would seem to be, in all ordinary cases, sufficient safeguards against frauds of that character; and the declaration does not aver exceptional circumstances to give the right of action in the present instance."

In Ætna Ins. Co. v. Reed, 33 Ohio St. 283, the Supreme Court of Ohio says: "The personal relation of the parties was not one calculated to beget confidence or reliance, but the contrary. Rice was acting avowedly as the agent of a party whose interests were adverse to Reed, and common intelligence would have caused Reed to know he was not acting as his friend or advising his interests. Presumptively he would not be likely to stand in a relation different from other persons representing adverse interests. From the time the within statement was completed, Rice acted in a hostile rather than a friendly spirit, and with a strong assertion of opinion claimed the loss was a dead loss to Reed, and thus endeavored to induce Reed to think he could do no better than take his offer of one hundred dollars. It was not done with the thought on either side that he was a friendly adviser, but rather as one driving the best bargain he could for his employer. In this Reed could scarcely be deceived. All this time Reed was apparently as fully conversant with the facts of the case as Rice, and at liberty to ascertain the law of his case if he desired to do so. It was even suggested to him to do so with the probable result."

And in Mayhew v. Phœnix Ins. Co., 23 Mich. 105, the Supreme Court of Michigan says:

"Ireton was the agent of the adverse interest, and no one of ordinary experience would suppose him likely to forego the interests of his employers. Presumptively he would not be likely to stand in any different position from other persons dealing at arm's length. But he might assume a different position and thus become responsible.

"He does not seem to have done this. From first to last he displayed a somewhat hostile spirit, and complainant does not appear at any time to have been convinced that his positions were right. They were, except as to some questions of valuation, assertions of law and not assertions of fact, and while Ireton undoubtedly desired to impress complainant with the difficulty of doing better, it was very far from being done with any idea on either side that he was a friendly adviser. And complainant in his testimony shows that he was influenced in his settlement by a consideration of the inconveniences and delays and expense of litigation, and a very laudable dislike of it. But this is a very different thing from mistaken confidence.

"There is no satisfactory evidence that Ireton attempted to prevent complainant from seeking advice, and there is no good reason given why he did not obtain it. He was not among strangers, and he was aware of all the facts. It was his duty as a man of common prudence to seek advice from his own friends, if he had not confidence in himself. There was time and opportunity to take advice, and there was no pressing haste for a settlement at all, before the whole ground should be reviewed. None of his legal rights could be divested by taking time for getting up the proofs in the regular way. The whole transaction was one in which there was no need for hasty steps, and it was not common prudence to attempt such a speedy arrangement without knowing at least the extent of the damage. We do not shut our eyes to the common fact that this eagerness to settle is very often stimulated by the sort of peremptory position taken in this case, and that this domineering course is a valuable auxiliary to fraud. But the law cannot interfere to supply a lack of firmness in those who allow themselves to yield to such influences without some further element of misconduct. A man, who knows or has the means of knowing his rights, must, under ordinary circumstances, be expected to stand upon them. There is no legal fraud or du-

ress in ordinary cases, in declining to comply with a demand without litigation."

In my humble opinion the above citations are conclusive on this question, and appellee should not recover.

This case, in my opinion, differs materially from Garsee v. Indemnity Ins. Co. (Tex. Civ.App.) 47 S.W.(2d) 654, 656, cited and relied upon by appellee. In the Garsee Case the evidence showed that the insurance Company's agent Berger was an experienced adjuster, while Garsee was an old, ignorant man suffering from a specific injury, to wit, hernia, for which the Compensation Law fixed a certain number of weeks' disability. The agent Berger represented to this old man that he would have to undergo a serious operation which might or might not be successful; that the insurance company would have to pay the expense of the operation, and, owing to the great number of similar bills, it might not be able to do so. Garsee was unable to read or write the English language, or any other language, and he told the agent Berger, at the time of the settlement, that he was placing confidence in him and was relying upon him to treat him right and to pay to him all he was entitled to. No such facts exist in this case. The appellee was not suffering with a specific injury, but, on the contrary, was making claim to the appellant for injury to the sacroiliac joint, the extent of which injury was within the knowledge of appellee and his father, Dr. McGee. On the date appellee signed the settlement agreement and receipt the agent Mann came to see him, talked with him, made the statements attributed to him, and appellee, without making any independent investigation at all as to what his rights were, signed the agreement and receipt. It seems to me that, before the appellee should be permitted to set aside this settlement agreement and receipt, made without compulsion, he should both allege and prove, not only the misrepresentations of the law, but that there was a fiduciary relation existing between him and the agent Mann which caused him to place undue confidence in the agent. The evidence in this case fails to establish such relationship.

Entertaining the views expressed above, it is my opinion that the judgment of the trial court should be reversed and the judgment here rendered for the appellant.