## PHIPPS v. AMERICAN NAT. INS. CO.

### No. 12332.

Court of Civil Appeals of Texas. Dallas.
March 19, 1938.

Rehearing Denied May 14, 1938.

Clifford Craig, of Dallas, for appellant.
W. B. Handley, of Dallas, for appellee.

YOUNG, Justice.

We have concluded to state briefly our conclusions of fact and of law .herein, upon the grounds urged in the above motion of appellant for written findings by this 'court, and, as enlarged upon in his motion for rehearing. Appellant was plaintiff in the trial court and appellee the defendant, and they will be so referred to here. Plaintiff sued as beneficiary under a nonmedical .life insurance policy for $396, issued by defendant June 10, 1935, on the life of his brother, Claude B. Phipps alleging issuance and delivery, death of the assured and compliance with all policy provisions. Defendant pleaded (1) breach of conditions precedent contained in the insuring clause of the policy, making the effectiveness thereof dependent upon the insured being in sound health on the policy date; (2) fraud in procurement of the policy; and (3) accord and satisfaction. By supplemental petition plaintiff alleged waiver and estoppel as to the first and second defenses above, and want of consideration as to the third, to which defendant interposed a general denial.

The substance of the facts, as found by the jury, is that: (1) No good-faith dispute existed between plaintiff, William E. Phipps, and the defendant at the time of signing the release in evidence; (2) the agent for defendant had stated to plaintiff, at the time of signing said release, that "$1.20 was all that was due him, due to the fact that the policy had been in effect only a short time," and such statement was a material misrepresentation and relied on by plaintiff in signing the release instrument; (3) that plaintiff had stated to the agent of the defendant, at the time of the signing of the application for this insurance, that his brother, Claude B. Phipps, was in bad physical and mental health, and defendant knew at the time of the delivery of the policy in suit that insured, Claude B. Phipps, was in bad health, both mentally and physically; and (4) that question No. 15 in the application, inquiring as to the existence of physical

and mental defects, and question No. 17, inquiring as to the illness or disease with which the assured had suffered for the past three years, had been left blank when plaintiff signed the same for the assured and delivered it to defendant's soliciting agent. Upon motion made by the defendant, notwithstanding the jury verdict, judgment was rendered by the trial court that plaintiff take nothing, and this appeal resulted.

The above application was dated May 30, 1935, the policy issued and was delivered on June 10th, following, to plaintiff, who throughout such transactions was acting for the assured, Claude B. Phipps. The testimony discloses that said Claude B. Phipps was under observation of Dr. Schwenkenberg, county psychiatrist, from May 16 to 24, 1935, his condition being known as general paresis, a disease due to syphilis of the brain; he having had assured under observation some weeks before. Assured had been in bad health a long time following a stroke of paralysis, with treatment for the past several years. About three months before the above dates of observation, assured began to break down, his ailing condition progressing to the extent that lunacy charges were filed on May 16, 1935, when he was placed in confinement. His mind began to fail noticeably at the time, memory bad, with difficulty in talking connectedly, delusions of grandeur and affluence, all typical of advanced stages of paresis. Assured remained in the Dallas county jail, under observation and treatment, until May 24th, when his brothers (plaintiff and another) requested his release for outside treatment, to which they felt that the assured would be more responsive. Later, plaintiff and brother came back to Dr. Schwenkenberg with such adverse reports as to assured's condition that it was deemed advisable to place him in the state hospital at Austin, where he could be restrained and treated, his condition being described as on a rapid decline, obviously worse than in May. Assured was rearrested June 5th on the pending lunacy complaint, and placed in a proper ward of the Dallas county jail. On June 6th, he was tried and adjudged of unsound mind, continuing under restraint until transferred to the Austin state hospital, where he died June 30, 1935. The death certificate that followed certified the principal cause of death was general paralysis of the insane, con-

tributed to by syphilis. Plaintiff had paid $1.20 premium on the policy in question and, on July 3, 1935, executed the following release to the defendant:

"Received of the American National Insurance Company of Galveston, Texas, One 20/100 Dollars, being the full amount of the premiums paid to the Company on and in full settlement, satisfaction and discharge of all my rights, title and interest under policy No. 9079519 issued by the American National Insurance Company of Galveston, Texas, on 6/10, 1935, to Claude B. Phipps.

"Now, therefore, in consideration of the said sum of $1.20 this day paid to me by the said American National Insurance Company of Galveston, Texas, the receipt whereof is acknowledged, I this day acknowledge the same as full settlement, satisfaction and discharge by the said Insurance Company of all its liabilities of whatsoever kind under said policy and my rights thereunder, and do hereby in all things release and discharge said Insurance Company from all further liability under said policy and declare the same fully extinguished.

"In further consideration of the sum referred to herein, it is understood, admitted and agreed that the said insured, Claude B. Phipps, was not in sound health on 6/10/35, the date said policy was issued as necessary thereunder to place liability upon the American National Insurance Company for the Insurance referred to therein. And for the further reasons, which are understood, admitted and agreed to: ———.

"Witness my hand at Dallas, Texas, this 3 day of July, A.D. 1935. Signed in the presence of T. R. Dorcey /S, H. C. Ewing /S. William E. Phipps /S."

At the time the application was signed, defendant's soliciting agents were at the house of plaintiff, collecting for other insurance, and the conversation turned to a lapsed policy on Claude Phipps, as to which the agent suggested a new policy, instead of a renewal. On plaintiff's statement to the agent that he did not think his brother could get much insurance, on account of his health, the agent said, "We are out looking for business this morning," and went on talking about the lapsed policy, and the application for the policy in suit was then discussed, signed by the assured, given to plaintiff, and by him delivered to said agent. Plaintiff

further testified that he told the agent at that time about both the mental and physical bad health of his brother (assured); that he had suffered a stroke of paralysis several years before, and that when the application was signed some of the blank spaces had not been filled out; also that, at the time the policy was delivered, he told the defendant's agent nothing about his brother's intervening conviction on the lunacy charges, or his arrest and confinement in the county jail, pending his transfer to a state institution for the insane. A provision of the policy was that "no obligation is assumed by the Company prior to the date hereof nor unless on said date the Insured is alive and in sound health."

■ In discussing briefly the law of this case, we are bound by the jury verdict set out above in substance, as there was testimony in the record to support the same. Our sole inquiry here is as to the sufficiency of the defenses of appellee, as matters of law.

■ First, we will consider the validity of the above release, in view of plaintiff's allegations and the findings of misrepresentation. The jury found that defendant's agent stated to plaintiff, at the time, that $1.20 was all that was owing, due to the fact the policy had been in effect only a short time. Plaintiff had custody of the policy and knew all the facts, as well as, or better than, defendant's agent, relative to the material events, beginning with the application on May 30th and terminating with assured's death on June 30th. The parties were on an equal footing, no fiduciary or confidential relationship existing. The plaintiff knew the policy had been in effect only a short time, and we conclude the statement in question to be no more than the expression by the agent of his opinion as to the policy, and not a statement of fact on which to predicate actionable fraud. National Fire Ins. Co. v. Plummer, Tex.Civ.App., 228 S.W. 250; McGary v. Campbell et al., Tex.Civ.App., 245 S.W. 106, 112; Franklin Ins. Co. v. Villeneuve, 25 Tex.Civ.App. 356, 60 S.W. 1014; Edge v. Business Men's Assur. Co. of America, Tex.Civ. App., 15 S.W.2d 44, 45; Braxton v. Haney, Tex.Civ.App., 82 S.W.2d 984; Black on Rescission, vol. 1, pp. 187, 188. Of the cases cited by plaintiff on fraud in the procurement of the release instrument, the latest one of Safety Cas. Co. v. Mc-Gee, Tex.Civ.App., 93 S.W.2d 519, has had writ of error granted; and aside from this is largely based on Garsee v. Indemnity Ins. Co. of North America, Tex.Civ.App., 47 S.W.2d 654, where facts of illiteracy and relations of special confidence were involved.

■ There being no fraud in the obtaining of the release, the fact of a good-faith dispute as to liability can be seen from the terms of the instrument itself. Plaintiff admitted therein that the assured, Claude B. Phipps, was not in sound health at the date of the issuance of the policy "as necessary thereunder to place liability upon the American National Insurance Company for the insurance referred to therein." As was said by the Commission of Appeals in Great Southern Life Ins. Co. v. Heavin, 39 S.W.2d 851, 852: "A party to a written settlement may not contend that there was no dispute to compromise, when the instrument itself clearly states the grounds for the settlement and he deliberately signs and acknowledges it. Texas Jurisprudence, par. 29, p. 269, and par. 30, p. 271, and authorities there cited. This is the situation of the defendant in error in this case."

■ As to defendant's remaining defenses, we will assume, as the jury found, that notice was imputed to the insurance company on the date of the application that the assured was in bad health, both physically and mentally. Later, on June 10th, when the policy was issued and delivered to plaintiff, assured had been adjudged insane, and at the very time was under restraint in the Dallas county jail, awaiting transfer and continuing confinement in a state institution for such unfortunates. Plaintiff failed to advise defendant's agent, in any wise, of this material change of status of the assured. In Forrester v. Southland Life Ins. Co., Tex.Civ.App., 43 S.W.2d 127, the failure of assured to disclose material facts arising between the time of the application and the delivery of the policy was sufficient to avoid the same, even though there was no stipulation therein as to sound health at the time of such delivery. We think the principle of the Forrester Case is especially applicable here, where the policy, accepted by plaintiff, stated in its face "that no obligation is assumed by the company prior to the date hereof, or unless on said date the assured is alive and in good health." But plaintiff contends that

defendant imputedly knew of the true conditions at the time of the application, and hence was visited with the same knowledge ten days later on the policy date. A bad state of health, physically and mentally, is measurably different from a condition of organic disorder of such nature as to justify a conviction and restraint following an insanity trial; and a disclosure of these later facts should have been made under the good-faith rule, which is held to apply to all parties to insurance contracts. Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. '512, 72 L.Ed. 895. Shaner v. West Coast Life Ins. Co., 10 Cir., 73 F.2d 681, citing the Stipcich Case, says (page 685): "The simplest rudiments of fairness require an applicant for insurance to disclose to the company any adverse change .in his physical condition occurring after the application is submitted and before the policy is issued and delivered. Failure to do that here rendered the policy unenforceable because in virtue of the contractual provision it did not go into effect."

■ The contents of the application for insurance have no contractual force, not being made a part of the policy. Plaintiff contends, under authority of Lee v. Mutual Protective Ass'n of Texas, Tex. Civ.App. Eastland, 47 S.W.2d 402, affirmed in Tex.Com.App., 65 S.W.2d 271, that his answers as to the bad condition of his brother's health should be considered, in law, the true answers to questions 15 and 17 of the application, putting defendant on notice of such facts, then and thereafter. The particular facts in insurance contracts of this character are largely controlling as to the principles of law applicable thereto, and, while we follow the Lee Case, supra, in the conclusions there reached from the facts, we have here a situation somewhat different. The statement of the agent to the plaintiff on the date of the application that they were "out looking for business that morning," together with accepting the application with these material questions unanswered, could not fail to have impressed the plaintiff that such agent was not concerned with the condition of the assured's health, and that true information thereof would probably not be placed in such instrument. Under this testimony, as detailed in the record, and the allegations of plaintiff's supplemental petition, issues of good faith and want of negligence on the part of

plaintiff were raised, as illustrated in San Angelo Life & Acc. Ass'n v. Haynes, Tex.Civ.App., 106 S.W.2d 363, as a part of plaintiff's cause of action. Even in Schumann v. Brownwood Mut. Life Ins. Ass'n, Tex.Com.App., 286 S.W. 200, strongly relied upon by plaintiff as being similar in facts, the court was careful to say that there was nothing in the case to suspect that Martin, the soliciting agent, would falsify his answers. That such is not plaintiff's case here is apparent from a careful reading of the record.

Motion for rehearing is overruled.