## PRICE v. D'YARMETT.
### No. 2410.

Court of Civil Appeals of Texas. El Paso.
April 10, 1930.

Rehearing Denied May 8, 1930.

Thomson, Dilworth & Marshall, Dodson & Ezell, and Ray Marshall, all of San Antonio, for appellant.

Frank W. Steinle, Arnold & Cozby, and Saunders & Whipple, all of San Antonio, for appellee.

HIGGINS, J.

This is a suit by Mrs. D'Yarmett against the appellant, Price. The action is based upon fraudulent misrepresentations inducing plaintiff to exchange properties with appellant. Relief by way of rescission was sought with an alternative prayer for damages. The parties will be here designated as they were in the trial court.

Plaintiff was a resident of Corpus Christi and owned two improved parcels of land in that city incumbered by separate liens, one lien being for $11,000, the other being for $7,000. Her equity in these properties was valuable. Defendant owned some unimproved lots in San Antonio. He was a stockholder in the Beacon Lumber Company, and the president thereof.

The defendant as first party, and the plaintiff as second party, entered into a contract to exchange properties. Those provisions of the contract material to the consideration of this appeal are as follows:

"Whereas, it is the desire and agreement of the parties hereto, that the party of the first part shall convey to the party of the second part, the tract of land herein first described, and further to erect, or cause to be erected thereon, a modern two-story brick veneer, twelve apartment building as hereinafter specified, and for the considerations hereinafter set forth:

"Now, therefore, know all men by these presents:

"That the said party of the first part hereby agrees, binds and obligates himself to erect, or cause to be erected upon the tract of land herein first described, the apartment house in accordance with the preliminary floor plans, and preliminary specifications which have heretofore been agreed upon by the parties hereto, and are now on file in the office of the Beacon Lumber Company, of the City of San Antonio, Bexar County, Texas, a copy of which preliminary plans and specifications are hereto attached; and it is further expressly agreed and understood, however, that the party of the first part shall and will, at his own proper cost and expense, promptly upon the execution of this contract, employ a competent and reputable architect to draw the detailed plans and specifications for such apartment building, to conform to the above mentioned plans and specifications; and that when the said detailed plans and specifications are completed by such architect, the same are to be properly and formally approved by the party of the second part, after objections and corrections not increasing the cost of the building made by second party are met and made, which approval shall be not later than five days after delivery of said plans and specifications, and thereupon the party of the first part shall contract for the

erection of said apartment building in accordance with said detailed and final plans and specifications with some reputable and reliable contractor, the construction thereof to commence not later than fifteen days after acceptance of said plans and specifications and to be under the general supervision of the architect employed by the party of the first part as hereinbefore provided, and a proper bond of not less than Twenty Thousand Dollars ($20,000.00) shall be given to insure the completion of said apartment building in accordance with the detailed plans and specifications herein mentioned."

The contract further provided that plaintiff upon approval by her of the final detailed plans and specifications, would convey the two parcels of land in Corpus Christi to defendant and the latter would execute and place in escrow his deed conveying to plaintiff the San Antonio property and plaintiff would execute and place in escrow three notes in favor of defendant, one for $35,000, one for $14,600, and one for $1,500, all notes to be secured by vendor's lien reserved in the conveyance of the San Antonio property. These notes and conveyance of the San Antonio property were to be delivered by the depository thereof when the apartment house had been completed in accordance with the final plans and specifications.

After the execution of the contract the detailed plans and specifications for the apartment house were prepared by an architect employed by defendant and the same approved by plaintiff. The apartment house was erected by defendant in accordance with such plans and specifications, accepted by plaintiff, and the contract finally executed by the parties.

The representations by the defendant upon which plaintiff based her action are thus stated in the petition:

"That the preliminary plans and specifications referred to in said contract, in accordance with which the said apartment house was to be erected, provided and called for the construction of a merchantable, livable apartment house which it would cost the defendant approximately $73,600.00 to construct. That the said preliminary plans and specifications provided for an apartment house which could not be constructed for as little as on or about $73,600.00, except by one like the defendant who was in the lumber business, and who could have the benefit of the wholesale cost of materials. An apartment house economically built in accordance with the said preliminary plans and specifications, would cost not less than about $73,600.00. That the lots described in said contract, located in San Antonio, cost the defendant $10,000.00. That the said San Antonio lots were of the reasonable market value of $10,000.00. That the said lots and apartment house constructed

thereon in accordance with said preliminary plans and specifications described in said contract, would cost approximately $83,600.00. That plaintiff could rely upon the defendant to build, and the defendant would build, an apartment house on the said San Antonio property in accordance with said plans and specifications, which would cost the defendant on or about $73,600.00. That the defendant was an experienced builder and lumber man, and interested in the ownership of a lumber yard in San Antonio, and familiar with the enterprise of building such a house as was called for by said plans and specifications, and that the defendant, building economically, would invest in the cost of the construction of said apartment house in accordance with the preliminary plans and specifications, approximately $73,600.00 in money. That the said property consisting of the real estate and apartment house thereon, when completed, would have a reasonable market value of on or about One Hundred Thousand Dollars. That the said apartment house and real estate, when completed, would represent an actual cost to the defendant of on or about $83,600.00."

Defendant answered by exceptions, general and special, general denial, and special plea that while the contract bears the date of December 12, 1927, it was in fact executed January 12, 1928; that the $1,500 note referred to in the contract was in fact executed to cover commission due by plaintiff to J. H. Compton and Fred Quaile, agents, representing her in the exchange; and that defendant was not the owner of that note, but held same in trust for Compton and Quaile whom he impleaded. By trial amendment defendant set up certain facts which he claimed constituted an election by plaintiff to rely upon her remedy in damages wherefore she was estopped to assert any right to rescind.

Special issues submitted and findings thereon are as follows:

"Question No. 1: Did Mr. Price, before the contract was signed, make a representation to Mrs. D'Yarmett to the effect that an apartment house, economically constructed in accordance with the preliminary plans and specifications, would cost $73,600.00? Answer 'yes' or 'no.'

"We, the jury, answer: Yes.

"If you answer 'no' to the above Question No. 1, then you need not answer Questions a, b, c, and d. If you answer 'yes' to Question No. 1, then answer Questions a, b, c and d.

"(a) Did Mrs. D'Yarmett believe that said representation, if any, was true at the time she signed the contract, deeds and notes? Answer 'yes' or 'no.'

"We, the jury, answer: Yes.

"(b) Did said representation, if any, materially induce and cause Mrs. D'Yarmett to sign the contract, deeds and notes?

"We, the jury, answer: Yes.

"(c) Did Mrs. D'Yarmett believe that said representation, if any, was true when she signed the acceptance of the apartment house? Answer 'yes' or 'no.'

"We, the jury, answer: Yes.

"(d) Did said representation, if any, materially induce and cause Mrs. D'Yarmett to sign said acceptance? Answer 'yes' or 'no.'

"We, the jury, answer: Yes.

"Question No. 2: Did Mr. Price, before the signing of the contract represent to Mrs. D'Yarmett that he paid Ten Thousand Dollars for the San Antonio lots? Answer 'yes' or 'no.'

"We, the jury, answer: Yes."

Supplementary issues to question 2 were submitted, as were those submitted in connection with question 1. Those questions were all answered in the affirmative.

"Question No. 3: Did Mr. Price, before the signing of the contract make representation to Mrs. D'Yarmett that he would spend in the construction of the apartment house on the San Antonio property $73,600.00? Answer 'yes' or 'no.'

"We, the jury, answer: Yes."

The same supplementary issues were submitted in connection with this question and answered in the plaintiff's favor.

Other questions were submitted relating to values.

Plaintiff filed motion for judgment asking first judgment for rescission and in the alternative for damages.

Relief by way of rescission was denied by the court, but damages awarded in the sum of $30,600, with interest from June 19, 1929, the date of the acceptance of the apartment house by plaintiff. Disposition was also made of the right of Compton and Quaile to the $1,500 note. As to this latter feature of the judgment no question is raised.

It is admitted by defendant on page 4 of his brief the undisputed evidence shows he paid $6,000 for the San Antonio lot, which was about its reasonable market value; that the construction of the apartment house was let upon competitive bids and the house and lot cost defendant approximately $51,000 in cash; that a house constructed in accordance with the detailed plans and specifications could not reasonably have cost anywhere near $73,600.

■ While it is perhaps not material, it may be added that when the defendant made the representations alleged, the evidence shows he not only knew the falsity of the representation concerning the cost of the San Antonio lot, but he also knew the approximate cost of the proposed building and knew the falsity of his representation concerning its prospective cost. These facts disclose actual and intentional fraud.

■ The plaintiff does not question the fact that the house was constructed in accordance with the final detailed plans and specifications as approved by her, and a number of appellant's propositions are founded upon the theory that he thereby performed the obligation assumed by him in the contract, and the representations relied upon by plaintiff are thus repugnant to the terms of the written contract and constitute an effort to alter, vary, and contradict the terms thereof.

The parol evidence rule thus sought to be invoked has no application. In the first place, the contract is silent as to the cost of the proposed building. Furthermore, this action is based upon fraud committed through false representation of facts inducing the execution of the contract. It is not a case of parol promissory representations contractual in their nature which are not embodied in a subsequent written contract evidencing the obligations assumed by the parties. The first two questions submitted by the court were purely as to representations of fact.

■ The third question seems to have reference to the allegation that defendant represented he "was an experienced builder and lumber man, and interested in the ownership of a lumber yard in San Antonio, and familiar with the enterprise of building such a house as was called for by said plans and specifications, and that the defendant, building economically, would invest in the cost of the construction of said apartment house in accordance with the preliminary plans and specifications, approximately $73,600.00 in money."

We regard this as more in the nature of a representation of fact as to what the building would cost defendant, situated as he was, rather than a promissory contractual representation which was merged in the written contract. But if mistaken in the view that the latter representation was one of fact, nevertheless the representations submitted in questions 1 and 2 were clearly representations of fact, were found to be false, and in connection with the other facts pleaded, established by the evidence and found in plaintiff's favor, support the action and judgment rendered.

■ A charge was requested to be given in connection with question 1, reading:

"You are instructed in connection with Question No. 1 submitted in the charge of the court that in considering your answer thereto you will not consider any testimony as to what either Quaile or Compton may have stated to the plaintiff with reference to what the apartment house would cost, or what defendant would spend thereon. If you believe that either Quaile or Compton, or both of them made such statements; but your answer must

be confined to what you believe from the evidence that the defendant personally stated, if anything, to plaintiff with reference to what the apartment house would cost, or what he would spend thereon.

"Therefore, unless you believe and find from a preponderance of the evidence that Price personally stated to plaintiff in a conversation at the Gunter Hotel that the apartment house economically constructed in accordance with the preliminary plans and specifications would cost $73,600.00 you must answer Question No. 1 'no.'"

Similar charges were requested to be given in connection with questions 2 and 3.

Charges of this nature should not be given in cases submitted upon special issues. Their refusal presents no error. It has been repeatedly so held. T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Freeman v. G., H. & S. A. R. Co. (Tex. Com. App.) 287 S. W. 902; Quanah Ry. Co. v. Hogland (Tex. Civ. App.) 297 S. W. 763; Humble Oil & Ref. Co. v. McLean (Tex. Civ. App.) 268 S. W. 179; Id. (Tex. Com. App.) 280 S. W. 557; Anderson & Co. v. Reich (Tex. Com. App.) 260 S. W. 162; G., H. & S. A. R. Co. v. Ford (Tex. Civ. App.) 275 S. W. 463.

■ Nor is there any merit in the complaint that questions 1, 2, and 3 did not confine the jury to the consideration of representations made by defendant as distinguished from statements made by the agents Compton and Quaile. The jury could not have inferred from these questions that they were at liberty to consider statements made by anyone but Pride, the defendant.

■■ It is objected to the supplementary issues lettered b and d, that by the use of the words "materially induce and cause" the court submitted an issue of law, and further that a definition of the word "materially" should have been given.

As to the first objection we consider it without merit. At most, it was but a mixed issue of law and fact which it was necessary to submit for the jury's finding.

As to the other objection, if defendant desired the word to be defined, it was incumbent upon him to prepare and request a definition or call the court's attention to the omission in the objections which he made to the charge. Having done neither, he is in no position to complain of the failure of the court to define the word "materially." Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Rodgers v. Fleming (Tex. Com. App.) 3 S.W.(2d) 77.

■ By the seventh proposition it is asserted the findings are insufficient to support the judgment because there is no finding by the jury upon the issue of "whether or not the contract would have been entered into, or the house and lot have been accepted as in compliance with the contract if the alleged promises and representations had not been made."

Questions 1, 2, and 3 establish that defendant made the representations alleged. All of the evidence, including defendant's own testimony, shows the falsity thereof. The findings supplementary to issues 1, 2, and 3 establish that plaintiff believed the representations to be true at the time she signed the contract, deeds, notes, and acceptance of the house, and such representations materially induced and caused her to sign such contract, deeds, notes, and acceptance. These findings and undisputed facts within themselves show fraud. The other findings show damage resulting which complete the elements necessary to maintain an action based on deceit. The finding that the representations materially induced and caused plaintiff to sign the contract, deeds, notes, and acceptance necessarily embraces a finding that she would not have signed if the representations had not been made. For if she would have so signed, then it could have been found that she was materially induced and caused to sign by the representations.

■ But if a finding upon the issue is essential, then the issue is but supplementary or incidental to the main issue, and it is presumed the court found the issue in plaintiff's favor; no request for the submission of the issues having been made by the defendant. Article 2190, R. S.; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591.

The overruling of the special exception referred to in the eighth proposition presents no error. The allegations excepted to were relevant to the issues in the case. For like reason the ninth proposition is without merit.

■ The eleventh proposition is founded upon the theory of a waiver by plaintiff of the fraud. It is asserted the evidence discloses that at the time plaintiff accepted the house she knew the same cost much less than $73,600 to build. In the first place, this is affirmative defensive matter not pleaded. But aside from this the evidence does not establish as a matter of law such knowledge on plaintiff's part at the time she accepted the house.

The only remaining proposition relates to alleged improper argument by counsel for plaintiff in addressing the jury and alleged improper statements made by him in opening statement made to the jury, before introduction of evidence, of what was expected to be shown by the plaintiff.

The various bills of exception relating to this matter have been examined. We think nothing improper is shown. We regard the statement and argument of counsel as justified by the evidence. This is a case of fraud

abundantly established by the evidence. Counsel rested under no obligation to be soft spoken in discussing the facts reflected by the evidence.

Affirmed.