Al Schulman and Simon Frank, Houston, for petitioner.

Will Sears, City Atty., and DeWitt Reagan, Asst. City Atty., Houston, for respondent.

PER CURIAM.

The petitioner presented to the Court of Civil Appeals two points of error, as follows:

"Point I. The trial court erred in dismissing Appellant's Petition inasmuch as a city is engaged in a proprietary function while constructing a sewage disposal plant and is liable for its negligent acts."

"Point II. The trial court erred in dismissing Appellant's cause of action for the reason that Appellant's Petition alleges in effect that the City of Houston was conducting a nuisance for which it is liable."

Both points of error were overruled by the Court of Civil Appeals, 259 S.W.2d 765, but only the ruling on the first point is brought here for review.

We are satisfied that the judgment of the Court of Civil Appeals is a correct one and that the opinion of that Court correctly declares the law on the point of error before us, but inasmuch as we have no jurisdiction of the second point our order must be: Application refused, no reversible error.

## WESTCLIFF CO., Inc. et al. v. WALL.

### No. 15448.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 25, 1953.

Rehearing Denied Oct. 30, 1953.

452

Thomas M. French, Jr., John S. Estill, Jr., and Cal Estill, Fort Worth, for appellants.

Rawlings, Sayers, Scurlock & Eidson and Nelson Scurlock, Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment awarding actual damages for the plaintiff, widow of a purchaser in a real estate transaction, against defendants, who were not principals to such transaction but against whom suit was predicated upon their having induced the purchase by false promises to do and to refrain from doing certain things relating to their own adjoining properties in the future, and awarding exemplary damages against the one of the defendants who had actually made the promises, the defendants appeal.

Judgment affirmed.

For the purposes of this appeal we may consider that J. E. Foster, Jr., was at all material times an officer in the Westcliff Company, Inc., a corporation. The Westcliff Company was the promoter of an addition in the City of Fort Worth known as the Westcliff Addition. We may consider also that this Company had formerly owned all the land comprising the subdivision, and had subdivided it, laid out streets and lots and had sold various of said lots to persons for construction of homes in accomplishment of real estate ventures known as speculative building. In other words, a number of the lots, either by lot or block of lots, were purchased by builders, who built residences to sell. A certain portion of the lots and blocks in the Addition were zoned for commercial type construction and were held by the Company for use by way of lease to prospective persons desiring to engage in business. The operation of the properties held for lease by the Company was in part that of building various types of mercantile structures and then seeking lessees conducting the character of business enterprises desired by the Company, and a part of them consisted in locating desirable prospective lessees in certain types of business enterprises and by arrangement building for them, under their plans, establishments for the conduct of their businesses. In connection with the doing of this, J. E. Foster, Jr., had control of the location of businesses and of the building locations for the conduct thereof.

Block No. 6 of said Addition comprised a group of lots which were zoned for residential type construction. Lots Nos. 1, 2, 3, 4 and 5 of Block No. 6 were immediately across the street to the south from Block No. 1, which block comprised the commercially zoned property of the Company, which it was retaining to develop by way of lease to business establishments.

J. E. Foster, Jr., and the headquarters for the Westcliff Company were located in an office building in downtown Forth Worth, several miles distant from the location of the Westcliff Addition.

Several of the lots in Block 6, Westcliff Addition, and including Lot 2, were sold by the Company to F. & N. Construction Company, which was engaged in speculative building and which Company was in the process of erecting a building on Lot 2 and had said building more than fifty per cent completed by the latter part of August or first of September, 1947.

F. & N. Construction Company had a real estate sales agent named Lewis D. Wall, who was attempting to sell Lot No. 2

in Block No. 6 of Westcliff Addition and the improvements being erected thereon to a purchaser. This agent had many other listings of property for sale besides such property. He had prospects in his mind, including Drew S. Clifton, Judge of the County Court at Law of Tarrant County, Texas, and including his son, Lewis D. Wall, Jr., who was the District Clerk of Tarrant County. Bearing in mind the needs of Judge Clifton for a home, this agent, at about the time aforesaid, arranged to pick up Judge Clifton and drive him to the Westcliff Addition and demonstrate Lot No. 2 in Block No. 6 to him, with the idea in mind of interesting him in the property. He also arranged to take his son Lewis D. Wall, Jr., along on said trip in connection with a search for a home for the son, though the trip was primarily made to show the property in question to Judge Clifton. These three parties drove to the Westcliff Addition, visually examined the property and likewise observed the surrounding premises, including Block No. 1, then "a Johnson grass field", which the Westcliff Company was planning to develop into what is known as a Shopping Center.

During the course of this inspection, there were various questions which arose in the minds of the inspecting parties as to what might be expected of development in said Block 1, and as a result of the fact the agent was himself without knowledge of the details of such future planning, the three persons drove to downtown Fort Worth and went to the office of the Westcliff Company and into the office of J. E. Foster, Jr., where a conversation was had with him, the questions the parties had in mind relating to future development of Block 1 being asked directly of Mr. Foster by Judge Clifton in the presence of the agent and the agent's son, Lewis D. Wall, Jr.

In the course of this conversation there arose the question of where the automobile service station would be located on Block 1. Such a station was planned by the Company to be incorporated into the shopping center on Block 1. It was a matter of concern, stated by Judge Clifton as his own, as to where the service station would be erected

with reference to the location of Lot 2, Block 6. It was also a matter of stated inquiry as to what the development would be immediately across the street from Lot 2, Block 6 on Block 1, with stated purpose (by Judge Clifton) of learning what would likely be the view from the front of a house built on said Lot 2. During the course of the conversation J. E. Foster, Jr., stated that trees and shrubbery would be located across the street from the lot in question, and the service station would be located some distance away, approximately a block to the west thereof, where it would not be in sight of said Lot 2, due to the distance therefrom of its location, coupled with the beautifying trees and shrubbery.

At this point Judge Clifton asked the question, "Well, what assurance would I have, if I purchased that (Lot 2, Block 6) that you would carry through this plan that you showed me here today?" To which question Foster replied, "You have my word."

Following these events transpiring in the office of J. E. Foster, Jr., Judge Clifton lost interest in the purchase of the property in question and so advised the agent. Lewis D. Wall, Jr., son of the agent, advised his father that he was interested in the property and would purchase the same if the necessary loan arrangements could be made, and upon making the necessary loan arrangements and by way of concessions made to him by his father, such as waiver of the sum by the father of the real estate commissions, etc., the son was able to and did, on November 3, 1947, purchase the property and did move into the same upon completion of the building thereon, thereafter making improvements of said premises by way of putting in a lawn, shrubs, etc.

At the time of all the events aforesaid, Earline Wall was the wife of Lewis D. Wall, Jr. The premises in question were purchased by her and her husband for their use as their home. Subsequently on or about the month of October, 1949, without having theretofore observed the sign which for a period of a month or more was located upon the part of Block 1 immediately

across the street from her home, publicizing the information that a service station was to be erected at that point, Mrs. Wall observed that a service station was in the process of being erected at such point. Lewis D. Wall, Jr., along with a neighbor, C. O. Simmons, Jr., went to see J. E. Foster, Jr., to complain of the erection of the service station at such location. During the course of this conversation Wall stated to Mr. Foster, "I think you ought to put the filling station where you told me you were going to put it." Foster did not assert that he had not so told Wall. Neither did he admit that he had told him such. Nothing connected with this conversation affected the construction of the service station and no further action was taken in prevention thereof by any person and the station was completed of erection and placed in operation.

On date of March 19, 1950, Lewis D. Wall, Jr., died as a result of an airplane accident. Subsequent to such time and about July or August of 1950, Earline Wall, his widow and sole heir under his will, called upon Mr. Foster. She made complaint to him regarding the service station and of the damage and inconvenience she contended that she was experiencing as a result of the construction, maintenance and operation of said service station in its location across the street from her house. As a result of this conversation and at least one future conversation, J. E. Foster, Jr., and by and through him the Westcliff Company, Inc., denied to Mrs. Wall any obligation by reason thereof. Following this, on date of July 28, 1951, Mrs. Earline Wall, as plaintiff, filed a suit alleging actionable fraud under Article 4004, Texas Revised Civil Statutes, 1925, as against J. E. Foster, Jr., Westcliff Company, Inc., and J. E. Foster & Son, Inc., as defendants. Subsequently the last named of these defendants was dismissed as a party. Upon a jury trial the plaintiff prevailed, and judgment in her behalf for actual damages under the statute in the amount of $2,290 was entered as against both defendants, and judgment in her behalf for exemplary damages of $1,603 was entered as against defendant J. E. Foster, Jr. Both defendants have appealed.

Appellants claim error resulted because the court denied them the right to introduce an abandoned pleading of the appellee in evidence. Reference to the statement of facts discloses that such record shows that the pleading was received in evidence before the jury. The statement of facts bears the signature of appellants' attorneys, along with that of the opposing attorneys, to an agreement stipulating that such is a full, true and correct transcript of the proceedings had upon the trial of the cause. There is no occasion to look into the law on the point raised, as by their agreement to the record, on its face showing that the event complained of did not occur, appellants have no premise upon which to base the contention. 3-A Tex.Jur., p. 487, sec. 392.

Appellants claim error resulted from the submission of a certain special issue, specified only as to number, as having no evidence to support it. The transcript brought forward does not contain the charge embracing the special issues submitted by the court to the jury. Under these circumstances, the point does not refer to an ascertainable subject, necessary in itself to be referred to and considered as to its propriety by a review of the testimony, and for such reason it fails as a premise upon which the contention may be founded.

Appellants claim error resulted by reason of the refusal of the court to permit appellant J. E. Foster, Jr., to testify concerning sales of other properties adjacent to the Lewis D. Wall, Jr., property, which testimony they claim would be material on the issue of damages sustained by nearby property owners, due to the construction of the filling station in question. By reference to the statement of facts it is disclosed that at one point during the course of direct interrogation of appellant J. E. Foster, Jr., he was asked the question: "I believe that subsequent, or probably arising out of the conversation that you had with Mr. Evans and Simmons, there was a real estate transaction which involved Mr. Evans?". Objection to testimony of Foster, based upon the premise of the question so asked was

sustained by the court. The premise was not laid by the question which showed any materiality of the transaction in question or showed where the real estate, subject of the transaction, was located, and was certainly properly excluded by the court at the time. Subsequently, during course of direct examination, the same witness stated that the presence of the filling station did not adversely affect the value of the property Lewis D. Wall, Jr., purchased, and that he could prove it by the sale of the property next door to such property, which was not a duplex, as was the Wall property, but was a single-family residence-type structure, and which was the subject of a sale after the filling station had been erected. Then the question was asked of him, as follows: "And do you know the details of that sale?" At that point in the trial the appellant objected to further testimony on the point by the witness, and the objection was sustained. There does not appear to have been any exception taken to this action by the court, nor was there any bill of exceptions taken to the exclusion of the testimony by which was demonstrated the facts the witness would have testified to had he been allowed to proceed. No error is demonstrated of record which we may consider under these circumstances. 3–A Tex.Jur., p. 217, sec. 170. However, assuming that the witness would have testified that the house next door sold for as much money after the filling station was erected as the same property sold for before it was erected, such testimony would not have the effect of constituting proof within the provisions as to the measure of damage provided by Article 4004, which is not the difference, if any difference at all, in the value of real estate before the occurrence of an event and after the occurrence of the event, but is instead the difference between the value of such property as represented or as it would have been had the promise (as to future act) been fulfilled and its actual value in the condition in which it is (or was) delivered at the time of the contract (purchase). Sibley v. Southland Life Ins. Co., Tex.Sup.1931, 36 S.W.2d 145; Rahl v. Compton, Tex.Civ. App. Austin, 1937, 112 S.W.2d 509, error dismissed. Even had the proffered testi-

mony related to the proper measure of damages, yet there was lacking considerable proof by way of predicate to show substantial similarities of elements establishing material identities of property and its value to that purchased by Lewis D. Wall, Jr., prerequisite to warrant an appellate court in disturbing the exercise of discretion by a trial court in the disallowance of testimony on the matter. 17 Tex.Jur., p. 452, et seq., sec. 172.

That part of Article 4004, R.C.S.Texas 1925, material to be examined in considering the balance of the points upon which the appellants predicate their appeal, reads as follows: "Actionable fraud * * * with regard to transactions in real estate * * shall consist of * * * a * * * false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract."

It appears that at the conclusion of the testimony the appellants filed a motion for instructed verdict, which motion was overruled. Error is claimed because thereof. The motion was grounded upon the premise that there was no evidence upon which issues of fact entitling appellee to recover on the cause of action alleged could be submitted to the jury. The special issues which were submitted to the jury do not appear in the record, but besides the issues on damages the findings of the jury were prescribed in the judgment of the court to have embraced the following:

(1) J. E. Foster, Jr., represented to Lewis D. Wall, Jr., that the property directly across the street from the property which he did later purchase, would be landscaped and beautified and that no filling station would be placed across the street from the property.

(2) That Foster, at the time of making the representations, had no intention of complying therewith.

(3) That Wall believed the representations.

456

(4) That Wall relied upon the representations in the purchase of the property in question.

(5) That the representations made by Foster were material inducements made by him to Wall to make such purchase.

■ Though not shown to have specifically been found by the jury, it was actually either found by them, or was necessarily found by the court through authority of Texas Rule of Civil Procedure No. 279 that Lewis D. Wall, Jr., would not have purchased the property had he not received the promises in question from J. E. Foster, Jr. Such a finding would be authorized, if there was any evidence to support it, as it would be fairly referable to the finding of the jury to the effect that the representations made by Foster were material inducements for the purchase, and would be supplementary thereto. Rawls v. Holt, Tex.Civ.App. El Paso, 1945, 193 S.W.2d 536, error refused, w. m.; Butler v. Cole, Tex.Com.App.1932, 53 S.W.2d 1010; Price v. D'Yarmett, Tex. Civ.App. El Paso, 1930, 27 S.W.2d 616, writ refused. This is established law where no error is preserved for failure of submission of the supplementary issue and where no attack is made upon the form of the issue to which it is in supplement.

The situation is the same regarding any issue as to whether Foster's intent in making the promises constituted representations made to induce the purchase.

By reference to the testimony, it is found that J. E. Foster, Jr., made the representations which are in dispute in the presence of Lewis D. Wall, Jr., Lewis D. Wall, Sr., and Judge Drew S. Clifton at a time shortly before Lewis D. Wall, Jr., decided to purchase the property in question. These representations were to the effect that he would not locate the filling station contemplated to be built in the future by him and his Company at a point which would be across the street from the property subsequently purchased by Wall, and that the site across the street from said property would be landscaped and beautified by trees and shrubs. It is further found that the appellee would

not have considered purchasing the property she and her husband did purchase had she known a filling station would be placed across the street. At least she so testified upon the trial as to what would have been her position at a time prior to the time of the purchase, and such testimony was received without objection. It is still further found that C. O. Simmons, Jr., a neighbor of the appellee and her deceased husband, accompanied Lewis D. Wall, Jr., to call upon appellant Foster, at a time shortly after the construction of the filling station was begun, to register a protest with Foster about where the filling station was located. Simmons was present when Wall told Foster that he, Wall, thought that Foster ought to put the filling station where Foster had told Wall he was going to put it, which Wall understood was to be across the street from the Wall house and about a block to the west thereof. Neither in reply to this statement by Wall to Foster, at the time it was made, nor at any time later during the course of that conversation did Foster deny that he had formerly made such a promise to Wall.

■ In view of the foregoing proof, coupled with the undisputed fact that Wall did purchase the property shortly after the conversation was had with Foster when Wall's father and Judge Drew S. Clifton were present, evidence was raised justifying the submission to the jury of issues as to the fact of the representations, the fact of their having been made as material inducements to Wall to purchase, and the fact that Wall believed the representations and relied upon such in making his purchase.

Since appellant Foster testified that he had no recollection of the interview in question (when Judge Clifton was present), and since he testified that he had no intention to perform as per the purport of the promises at the time we must conclude that the interview did take place, then it must follow that the issue was raised and the jury was warranted in finding that Foster, at the time of wilfully making the representations, had no intention of complying therewith. The effect of Foster's own testimony is that if he made such representations, which he de-

nies having made, he had no intention of abiding by such. The representations constituted promises relating to acts and relinquishment of right to act in certain respects at a future time.

Prior to the time this suit was filed in the trial court Lewis D. Wall, Jr., died. Hence the jury could not have the benefit of his testimony. His lips are sealed. Whatever, if anything, he said to third persons apart from the appellants concerning whether he would or would not have purchased the property had he not received the representations in question from J. E. Foster, Jr., could not be received as testimony in the case. Any evidence of sufficient probative force to raise an issue on the question in this case must be by way of circumstantial evidence, there being no direct or positive evidence on the question. It is an indispensable part of the burden of proof necessarily assumed by the appellee in establishing actionable fraud under the statute to bring the case within the requirements thereof. The evidence in this case must raise at least an inference based upon proven facts to warrant the trier of the facts to find that but for Wall's having received the promise or promises in question from J. E. Foster, Jr., he would not have purchased the property he did purchase at the time he did purchase it. We therefore re-examine the evidence previously outlined with view to properly testing it in light of the question to be determined. All the evidence upon the matter is circumstantial evidence.

We take from 17 Tex.Jur., p. 907, sec. 409, the following discussions of the proof of civil facts by circumstantial evidence:

"Circumstantial Evidence. — Evidence which is termed 'circumstantial' consists in the proof of facts and circumstances which are collateral to the fact that is sought to be established and from which the mind concludes that the main or ultimate fact existed. Generally speaking, any conclusion may be based upon circumstantial evidence; and the fact that evidence is circumstantial does not render it incompetent nor destroy its probative force. Indeed, evidence of this character may be and often is as strong and conclusive as direct and positive evidence.

"The circumstances which amount to sufficient proof of a disputed fact can never be matter of general definition; and the only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of the jury. The jurors are the exclusive judges of the dispute as to whether a fact has been established by the circumstances in evidence. If all the facts and circumstances introduced in evidence, taken together, lead the minds of the jurors to the conclusion that the fact sought to be proved existed, they should so find; and where they have drawn a reasonable deduction from the facts proven, their conclusion must be taken as a fact found although some other hypothesis may be reasonable.

"To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit of a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, or, as it has been said, sufficient reasonably to produce belief of the existence of the fact which is sought to be shown by them. At all events they must not be equally consistent with the nonexistence of the ultimate fact. Where it is sought to prove an ultimate fact by a chain of circumstances, no circumstance should be omitted; every one should be taken and considered.

"The circumstances relied on must be proved by direct evidence; they may not, it seems, exist merely by inference or presumption. No safe conclusion, so it is said, can be deduced from circumstantial evidence if it be left reasonable to suppose that the circumstances themselves are not proven.

"As in other cases, it is sufficient if the fact is established by a preponderance of the evidence; and it is not necessary that the evidence exclude every other hypothesis or be sufficient to remove all reasonable doubt."

When, in a given case, the existence or not of an ultimate fact issue can only be found as an inference from evidentiary facts, the party having the burden of proof upon the issue must produce evidence to warrant the jury in believing that an inference of the issuable fact is more probable or reasonable than an inference of its nonexistence. The party having the burden of proof must make out as the more probable hypothesis the existence of the fact upon which he relies. National Aid Life Association v. Driskill, Tex.Civ.App.Eastland, 1940, 138 S.W.2d 238.

If there is evidence sufficient to warrant a reasonable belief of the existence of a matter of fact, even though that fact must be inferred from evidence of other facts which are proved, then such belief, though so inferred, may be resolved by a jury into a finding of fact which will support a judgment. Washington v. Missouri, K. & T. Ry. Co. of Texas, 1897, 90 Tex. 314, 38 S.W. 764.

It must be deemed to have been found by the trier of the fact that except for having been induced to purchase by the receipt of the promise Lewis D. Wall, Jr., would not have purchased. The circumstantial evidence to be considered might be considered by this appellate court to as well support the inference that Wall would have purchased even without such promise as the same evidence would support the inference that he would not have so purchased. At least, by a liberal construction the evidence does support an inference. The conclusion of the trier of the fact was that the latter should be the inference, and that it was more probable that Wall would not have purchased had he not been induced to do so by the promise. This was within the province of a jury or trier of fact and the constructive finding in this case will not be disturbed by the court. Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. See the discussion on the question at 23 Tex.Law Review, p. 196.

Appellants particularly attack the necessarily implied holding of the court that there was evidence indicating that Lewis D. Wall, Jr., had any right to rely upon the representations made by J. E. Foster, Jr., upon the occasion of their making. Error on the point is claimed by the appellants for the reason that if any promises were made they were made to Judge Drew S. Clifton and not to Lewis D. Wall, Jr., as reflected by undisputed evidence, and Wall was merely a "bystander" who overheard a transaction in which one party thereto was trying to induce action by another, and made promises to such other as part of the inducement, but not in any wise to the "bystander".

While the decision of the point would be indeed difficult had the evidence in the case only established that Wall was in fact a "bystander" when the representations were made to Judge Clifton, and that such representations could not be held to have been made as representations to persons who might be purchase prospects generally as distinguished from specific purchase prospects, our problem is not thus difficult for the reason that not only does the testimony of Lewis D. Wall, Sr., raise the issue by his statement effectively establishing that the discussion, during the course of which Foster made representations, was one wherein statements made by any person present might properly be considered as having been made to all other persons present under the circumstances attendant, but also we have the testimony of the witness C. O. Simmons, Jr., to the effect that when Lewis D. Wall, Jr., later made the direct assertion to Foster that Foster should have placed the filling station where he promised to put it such assertion was not denied by Foster. The evidence established that the only occasion when Foster could have made such a promise was during the course of the meeting when Foster made representations, unquestionably at least to Judge Clifton. The undisputed statement made by Wall to Foster during the course of the later conversation would properly be a circumstance throwing light on and raising an issue upon the material question of whether the representations that Foster had made on the prior occasion were at least indirectly made by him

to Wall as well as to Judge Clifton. Goldman v. Hadley, Tex.Civ.App.1909, 122 S.W. 282. Certainly if the representation was made to Wall he was entitled to rely thereon.

Judgment of the trial court is affirmed.